IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Bruce Wayne Howell, | ) | C/A No.  0:15-3051-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Corporal Eddie Berry, *Lieber Prison*; Officer | ) | |
| Edward  Ackerman, *Lieber  Prison*;  Captain | ) | |
| William Brightharp, *Lieber Prison*;  Warden | ) | |
| Joseph McFadden, *Lieber Prison*; Commissioner | ) | |
| Bryan Sterling, *SCDC Headquarters*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Bruce Wayne Howell, a self-represented state prisoner, filed this action against

the named defendants pursuant to 42 U.S.C. § 1983.  This matter is before the court pursuant to 28

U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on

the defendants' motion for summary judgment.  (ECF No. 40.)  Pursuant to <u>Roseboro v. Garrison</u>,

528 F.2d 309 (4th Cir. 1975), the court advised Howell of the summary judgment and dismissal

procedures and the possible consequences if he failed to respond adequately to the defendants'

motion. (ECF No. 42.)  Howell filed a response in opposition to the defendants' motion.  (ECF No.

44.)  Also pending is Howell's motion for a preliminary injunction (ECF No. 24), which the

defendants opposed (ECF No. 31).  Having reviewed the parties' submissions and the applicable law,

the court finds that the defendants' motion should be granted and Howell's motion denied.

## BACKGROUND

Howell claims that on June 18, 2014, while housed at Lieber Correctional Institution within

the South Carolina Department of Corrections ("SCDC"), the defendants failed to protect him from

PJG

an assault by a fellow inmate while Howell was being transferred from the shower area to his cell. Specifically, he alleges that he was already being housed in protective custody due to previous threats by unspecified inmates involved with the Folk Nation gang and, therefore, no other inmate should have been allowed near him. Additionally, he alleges that the correctional officers facilitated the assault by not following certain policies or procedures during Howell's transfer back to his cell. Howell also alleges that he was not given timely or sufficient medical care following the assault. (See generally Compl., ECF No. 1.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the



entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## B.    Defendants' Motion for Summary Judgment

### 1.    Official Capacity Claims

The defendants correctly argue that, to the extent Howell is suing them in their official capacities for monetary relief, they are entitled to summary judgment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the



reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").  As arms of the state, the defendants, who are all SCDC employees, are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity.  See Will, 491 U.S. at 70-71.  Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court.  See S.C. Code Ann. § 15-78-20(e).  Accordingly, to the extent the defendants are sued in their official capacities for monetary damages, they are immune from suit.  Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

> ### 2.    Eighth Amendment—Failure to Protect

Howell claims that the individual defendants failed to protect him from the assault by his fellow inmate while he was being transferred from the shower to his cell.  Additionally, he alleges that the corrections officers facilitated the assault by not following certain policies or procedures during his transfer back to his cell.  (Compl., ECF No. 1 at 6-7.)

To establish a failure-to-protect claim under the Eighth Amendment to the United States Constitution, an inmate must establish two requirements:  (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety.  Id.  A prison official is deliberately



indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk.  Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury).   To succeed under this standard on a failure-to-protect claim, "[t]he plaintiff . . . must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that the plaintiff complained to prison officials about a *specific* threat to his safety.  In other words, the defendants had to know that there was a substantial risk that those who attacked [the plaintiff] would do so, yet failed to take any action." Miller v. Turner, 26 F. App'x 560, 563 (7th Cir. 2001) (emphasis in original and internal citations omitted). Additionally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk."  Raynor v. Pugh, 817 F.3d 123, 128 (4th Cir. 2016) (quoting Farmer, 511 U.S. at 844).

Although prison officials have "a duty to protect prisoners from violence at the hands of other prisoners," Farmer, 511 U.S. at 832, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (internal quotation marks omitted).  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.  "While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, . . . he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be



true, or declined to confirm inferences of risk that he strongly suspected to exist." <u>Id.</u> at 843 n.8. However, a showing of mere negligence does not suffice to establish deliberate indifference. <u>See id.</u> at 834 (stating that to satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety); <u>see also</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 332-34 (1986).

The assault upon which Howell bases his claims is not disputed. All parties agree that when Howell finished his shower, Defendant Corporal Ackerman handcuffed Howell's hands behind his back and unlocked the shower door. (Compl., ECF No. 1 at 6.) As Howell was leaving the shower area, Defendant Corporal Berry entered the area with inmate Singleton. (<u>Id.</u>; Ackerman Aff. ¶ 3, ECF No. 40-3 at 1-2.) As inmate Singleton passed by Howell, Singleton "headbutt[ed]" Howell and knocked Howell into the wall. (Compl., ECF No. 1 at 7; Berry Aff. ¶ 3, ECF No. 40-4 at 1-2.) Berry was able to grab Singleton and lock him in a shower stall and Ackerman accompanied Howell back to his cell. (Compl., ECF No. 1 at 7; Berry Aff. ¶ 3, ECF No. 40-4 at 1-2.)

In support of their motion, the defendants have provided affidavit testimony, as well as the incident report that was filed regarding the above-described events. Notably, both Ackerman and Berry aver that, prior to the incident, neither had knowledge of any conflict between Howell and Singleton. (Ackerman Aff. ¶ 5, ECF No. 40-3 at 2; Berry Aff. ¶ 4, ECF No. 40-4 at 2.) Rather, Ackerman avers that he had previously observed Howell and Singleton being friendly towards one another. (Ackerman Aff. ¶ 5, ECF No. 40-3 at 2.) Moreover, Defendant Captain William Brightharp, the captain over the Special Management Unit ("SMU") where Howell was housed, swears that it was determined that officers Berry and Ackerman were not at fault for the incident and that the incident was due solely to the unforseen actions of inmate Singleton. (Brightharp Aff. ¶ 5,

Page 6 of 13



ECF No. 40-5 at 2.)  Brightharp further avers that "[c]ontrary to [Howell's] allegations, there is no SCDC policy which mandates that only one SMU inmate be allowed out of his cell at a time."  (Id.) Brightharp, Ackerman, and Berry all aver that no disciplinary action was taken against Ackerman and Berry as a result of the incident.[1]  (Brightharp Aff. ¶ 5, ECF No. 40-5 at 2; Ackerman Aff. ¶ 5, ECF No. 40-3 at 2; Berry Aff. ¶ 4, ECF No. 40-4 at 2.)

In opposition to the defendants' well-supported motion, Howell has failed to present evidence from which a reasonable jury could find that officers Ackerman and Berry were aware of a substantial risk of harm posed by Singleton to Howell and that the officers disregarded that risk. Farmer, 511 U.S. at 847.  Additionally, Howell's unsupported assertions that the defendants did not adhere to SCDC policy or that the defendants were disciplined for their actions as a result of the incident are insufficient to reasonably refute the defendants' evidence to the contrary.  Therefore, the defendants are entitled to summary judgment with regard to this claim.

### 3.    Eighth Amendment—Deliberate Indifference to Medical Needs

Howell also alleges that, following the inmate assault, he was denied proper medical care for his injuries.  (Compl., ECF No. 1 at 8-10.)  Like Howell's allegations discussed above, an allegation that the defendants were deliberately indifferent to medical needs is analyzed under the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Farmer, 511 U.S. 834.  Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Estelle, 429 U.S. at 105.  To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or

---

[1] Brightharp notes that inmate Singleton was given a disciplinary charge for assaulting Howell and was convicted on this charge.  (Brightharp Aff. ¶ 6, ECF No. 40-5 at 2.)



to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837. Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks & citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Courts have recognized that "[l]ay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for." O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005); see also Nelson, 603 F.3d at 449 (noting that a prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. LeFevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Notably, the named defendants are all non-medical personnel. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that they failed to promptly



provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier, 896 F.2d at 854. Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id.

In support of their motion for summary judgment on this claim, the defendants provide affidavit testimony, as well as SCDC health system medical notes. (Ackerman Aff., ECF No. 40-9; Berry Aff., ECF No. 40-4; Brightharp Aff, ECF No. 40-5; Med. Records, ECF No. 40-8.) Ackerman testifies that, following the incident, he contacted the medical department to request that Howell be evaluated. (Ackerman Aff. ¶ 3, ECF No. 40-3 at 1-2.) The record shows that Howell was seen by a nurse later that day who noted a "3-4 cm sized red[d]ened raised nodule . . . on left forehead." (ECF No. 40-8 at 2.) The nurse further noted that Howell stated he had been "head butted," denied that he had lost consciousness, and complained of dizziness. (Id.) The nurse observed that Howell was standing at the cell door without difficulty. (Id.) The nurse directed that Howell be issued ice to apply to his forehead and for Howell to notify the medical department if his condition worsened. (Id.) The nurse further indicated the need for a full neurological assessment. (Id.) The medical records indicate that a "neuro check" was attempted on June 20, 2014, but that Howell refused treatment. (Id. at 3.) However, the next day, medical notes indicate that "no nuero-deficits" were observed. (Id. at 4.)

Howell has failed to present evidence reasonably refuting the defendants' showing that Howell was timely evaluated and properly treated following the inmate assault. Although Howell appears to allege that the nurse's examination was insufficient, as stated above, Howell does not



have a claim against the defendants merely because he disagrees with the course of treatment he received.  See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070.  Moreover, the nurse is not a defendant in this matter.  Accordingly, on this record, no reasonable jury could find that the non-medical personnel defendants failed to promptly provide Howell with needed medical treatment, deliberately interfered with that medical treatment, or tacitly authorized or were indifferent to a prison medical staff's misconduct.  Howell's claim that the defendants were deliberately indifferent to his medical needs therefore must fail.

### 4.    Defendants Stirling, McFadden, and Brightharp

To the extent Howell alleges claims against these defendants in their supervisory capacities under the theory of *respondeat superior*, such claims should be dismissed.  The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his or her individual capacity.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).  Moreover, a claim based upon the doctrine of *respondeat superior* does not give rise to a § 1983 claim.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978).  "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.  As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer."  Id. at 677.  Indeed, the dissent in Iqbal opined that, "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely."  Id. at 693 (Souter, J., dissenting).



While Fourth Circuit precedent recognizes that supervisory officials may be held liable in some circumstances for constitutional injuries directly inflicted by their subordinates, Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), certain criteria must be demonstrated to trigger such liability.  A plaintiff must show that the supervisory official (1) was actually or constructively aware of a risk of constitutional injury, (2) was deliberately indifferent to that risk, and (3) that an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999).  Howell appears to name Defendant Sterling solely in a supervisory capacity and thus fails to demonstrate a cognizable constitutional claim against him or any constitutional injury resulting from any personal actions.  Similarly, to the extent Howell alleges claims against Defendants McFadden and Brightharp solely in their capacity as supervisors over Defendants Berry and Ackerman, such claims against these defendants for actions taken by subordinate employees should be dismissed.  To the extent Howell alleges that Defendants McFadden and Brightharp were made aware that he needed medical attention, for the reasons discussed above, supra B.3., such a claim for deliberate indifference to his medical needs fails.

**C.     Howell's Motion for a Preliminary Injunction**

Howell's motion appears to seek injunctive relief from individuals employed at Broad River Correctional Institution.  However, such relief is not available against non-parties.  See Fed. R. Civ. P. 65(a).  Accordingly, Howell's motion should be denied.  (ECF No. 24.)

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the defendants' motion should be granted (ECF No. 40) and Howell's motion denied (ECF No. 24).

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 1, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).